Good morning, your honors. Ronald Richards for the appellant. What I wanted the court to look at is the procedural timeline to how this case initiated on March 20th. Let me ask you before you get into that, I want to make sure I understand what your position is. Does Mr. Simard claim to be the owner of the money? Yes. Where does he make that claim? He makes the claim in the declaration he submitted opposing the motion to strike his answer. No, it's written in kind of an odd way. He says, I am asserting a legal right and ownership interest. He doesn't say I am the owner. And I wondered if that's just a semantic thing or if you were trying to signal something different. No, I just think the way the Nevada counsel drafted it, he drafted it covering both the possessory interest and an ownership interest. He was asserting that he was the owner of the money. It also should be noted, Judge Silverman, that when you file the administrative claim opposing forfeiture, you have to file a claim under oath to get the case from the administrative level to the judicial referral. So this would be the second time they actually file the claim of ownership. You can't just file an unverified claim to move it out of the administrative process. I understand all of that, but I didn't see any place where he says I am the owner. I guess in hindsight, it would have been better to make that clear, but I thought that the declaration that he provided made it clear that he's the owner of the funds. The way it comes off when you read that versus the disclaimer that he signed, because he says eggs aren't mine, money isn't mine. So I thought maybe he was trying to write around the disclaimer. He was writing he wrote the declaration, I guess, the way him and the Nevada counsel discussed what his view was to oppose the motion. I mean, he clearly had possession of the currency, and you authored an opinion in 2004, USA versus 100,348, where Mr. Mazel was going through the airport, and you gave him standing personally based on a gratuitous Bailey theory or the fact that he had possession as well. And so at the time of the motion to strike, that's why the procedural posture was important. No one would be really on notice that within the first 90 days they would have to do more than assert an ownership when possession was already conceded by the government's complaint. You can't take discovery in a civil case until the judge issues a Rule 16 scheduling order, and Nevada local Rule 16-1B provides the court to issue the scheduling order sooner. But I've never seen a case, and none of the cases cited by either of the parties, had the government file the motion to strike before they even took Rule G6A discovery, which is those interrogatories they could take to clarify. In this case, the government engaged in very sharp practice by filing the motion before they even sought clarification of... Why would they have to take discovery if they have a document from your guy saying, I don't know anything about this money? Well, because the fact is that he filed an answer in the case and disputed a lot of the claims of the government complaint. And so what I would say is the government is unfairly trying to focus the court on limiting the scope of the Article III standing to the time of the traffic stop, where once the complaint is filed in the government complaint, they concede that he was the possessor of the money. Mr. Samard files an answer, admitting and denying and disputing various allegations. A reasonable practitioner is not on notice that all of a sudden the government would then move to strike the answer, saying that all of a sudden that there's no standing, and they want to provide a prudential limitation in the form of this Article III argument, clearly at statutory standing. There are two possible avenues of standing, as I understand it, in this kind of thing. One is you are the owner, the other is you have a possessory interest. Is that right? Those are two ways to skin the cat. Under Article III or just Article III standing, you could be in possession or you can claim ownership. And Judge Reinhart in USA v. 191-910 actually authored that opinion in 1994 and simply said that a claim of ownership interest is enough for Article III standing. It's a low threshold. Let's get back to the possessory for a second. Yeah. Under the case you referred to before that Judge Wardlaw wrote, under the possessory prong of this, you have to have possession plus an explanation. Correct. That you don't have. In this case, we didn't have it yet. Well, we don't have it. We didn't have it. Okay. So then that leaves us only with the ownership. Correct. And if I understand your construct, it's enough to say I am the owner. That gets you in the door. That's correct. And we also said legal rights, and under Judge Wardlaw's opinion, that's all the person did as well. He had possession. He was carrying the money for someone else, and Judge Wardlaw authored the opinion, which said that he was a gratuitous bailee, and that's legal under both statutes for him to have standing. So there's no mistaking your theory here is that he says, I am the owner. That gets him standing. Correct. For the initial stage in the motion to dismiss stage, I'm not saying that for a summary judgment stage. That's why I filed. Let me make it specific. Okay. The rule is in the latest opinion, I think, that you have to make, and it's the latest, Judge Kudos, who is not here with us today. Right. Said at the motion to dismiss stage, which I think everyone agrees we're at, a claimant's unequivocal assertion of an ownership interest in the property is sufficient by itself to establish standing. Correct. So it would seem the question is, is what you filed in this declaration an unequivocal assertion of an ownership interest in the property? That's correct. I agree with that. So that's the issue, right? That's the issue. Okay. So if there's anything to talk about, it's for you to explain or answer questions as to why this is or is not an unequivocal assertion of an ownership interest in the property. And the words on the other side are, I am asserting a legal right and ownership interest in the monies. So the question, is that an unequivocal assertion of an ownership interest? Is that the issue? Yes. I think that's an issue of law. How much is the claimant supposed to – if the claimant states,  I don't think the claimant has to say the word unequivocal because that's a – That's still a funny way of phrasing it. It's like saying, I'm asserting the statute of limitations. It doesn't – it's not like saying, I am the owner. He said, this is the position I am asserting. You know, I mean, that's why I asked you at the outset if you were trying to dance around this or is he really claiming to be an owner and just didn't phrase it right? Why wouldn't he say, I – it's my money. I own the money. I'm the owner. But what he says instead is, I am asserting – fill in the blank. I'm the owner. I'm asserting latches. I'm asserting – it's just what he's asserting. Well, I will – a simple explanation for that is normally you put in a claim opposing forfeiture that you have – what your interest is. So he's saying his interest is one of ownership. So that's just the way it was drafted. He's also asserting a legal right to the money and an ownership interest. The problem when you couple this kind of odd wording with a document where the guy says, it's not my money, I don't own it, it kind of makes you wonder if this is really an unequivocal claim of ownership. Well, but I'm asking you to severely discount the statements at the scene because there's a lot of reasons why if you're on the roadway in the middle of the night and the police say sign this form, you want to leave and you sign the form. That's not – I don't even see in his declaration where he says what he wrote isn't true. Well, he said – Anything in his declaration that says it's not true? He said he felt coerced into signing the disclaimer. That's another thing. He said he felt coerced. He didn't say they coerced me. He said he felt coerced, but he never says what I wrote is – I wrote something false. He said – he said that if he didn't sign the form, he would be – he felt he would be arrested or something. Well, that might be true. Does he ever say it's – what I wrote here is not true? No, he doesn't, but – I think that's going to be a problem at some point in this case. You're right, but I'm trying to explain to the court why reasonably, at the point of the motion to dismiss stage, no one would really think, based on one other case, United States – let me just pull this one other case I thought was important – versus 475 Martin Lane, that was cited in the recent case in 133,420, that if someone claims that they have an ownership in the property, the whole point of the prudential limitation is so someone out of left field just can't come and make a claim on the money. This isn't a situation where the money was in someone else's car. This was in a car that the claimant was driving in their car. They had possession of the car, and they claimed ownership of the money. I don't think that they're required for the purposes of meeting the prudential limitation of Article III standing that at the motion to dismiss stage they were required to do more. The government, if they didn't like the answer, the response would be they would send Rule G interrogatories and say, what do you mean that you have a legal right and ownership interest? Are you dancing around the issue? And in the recent case cited by Judge Reinhart, they went through all the discovery interrogatories, deposition requests, and then the reason why that claim was struck was because the claimant refused to participate. And that may very well happen in a case like this. And I will concede to you, initially, before discovery is taken from both sides, you want to have your claimant not lay out every single position until you get all the discovery in the case so you can evaluate the circumstances around the stop. And in this case, we tried to point out that we couldn't even take any discovery or file any motions because the Rule 16 order was never issued. So I think you're correct in your focusing on the stage of proceedings we're in and saying our question is that this initial stage of the proceedings is what your client said enough. And then the next thing is, well, what discovery would you take? Well, I was trying to show how we were prejudiced because we would have filed a motion to suppress in taking discovery against the government. It wouldn't have affected the standing issue per se, but what it would have if the government took additional discovery from us, and usually they send out the Rule G interrogatories as a matter of course, we would have clarified and provided additional facts that would have justified, at least for the motion to dismiss stage, any residual concern.  Well, whatever you might have done after the motion to dismiss, you know, if you read the rest of the opinion I quoted to you, the person got the standing, but he quickly lost the case. And that may or may not be the same in your case here. Judge Silverman pointed out some of the problems you'll face after you get by the motion to dismiss stage. But Judge Ikuda went through carefully, said, yeah, you got standing, now you lose the case. Right, and they lost the case in that case because they asserted the fifth on discovery and their claim was actually stricken as a sanction for asserting the fifth. If that happens in this case, Mr. Samard will be in the same boat, but I think he at least gets in the courthouse to pursue his right to take discovery and allow the government to take discovery against him. I'd like to reserve two minutes for rebuttal. I'm still confused. What discovery do you think you can get from the government that's going to help you prove ownership? The – I wouldn't get any discovery from the government to prove ownership. I was trying to highlight to the Court the prejudice about not allowing him to file a motion to suppress because the Rule 16 order was not issued. We would have been able to file that at the same time we were litigating before the summary judgment. So by not issuing – Your plan is to prove ownership. Our plan is to prove ownership. You think you can prove ownership. Excuse me? You think you can prove ownership. For Article III standing? No, for real. I think we can prove ownership or, like I said, there's other grounds besides ownership. We can augment that with gratuitous bailee or bailee. It's just that I was – for Article III standing, the declaration gave him – he said he had a legal right to the money and ownership. So it wasn't limited to just one theory, but I think for the motion to dismiss Stage, he was certainly entitled to at least get past that to have a Rule 16 order issued so he could also assert his Fourth Amendment rights as to the stop of the vehicle. Thank you, Counselor. You've got a minute left. Thank you. Good morning, members of the panel. May it please this Court. My name is Michael Humphreys. I'm an assistant United States attorney from the District of Nevada. I'm here on behalf of the appellee of the United States of America. Do you agree with what I asked your opposing counsel, that the issue is whether in our latest opinion where we said at the motion to dismiss Stage, the claimant's unequivocal assertion of an ownership interest in the property is sufficient by itself to establish standing? And then the question is, is what Mr. Simard said in his affidavit, I am asserting a legal right and ownership interest in the money seized, is that enough to meet that standard that Judge Ikuda announced? I do not agree with that, Your Honor. All right. So what else is the issue? The issue in this case is what happened on August 7, 2008. As I listened to Appellant's argument So you don't agree that it's an unequivocal assertion of an ownership interest in the property is sufficient by itself to establish standing? I believe that you can't Do you agree or disagree with that? I do believe that at the statutory phase of standing, which is to say the rules that are under Supplemental Rule G-8, that if you assert that you are an owner, then that is enough to get you into the door. That is enough to establish standing. The Court, the cases have held that, that if you assert that you are an owner of the property, that is sufficient. Okay. Sure. Where? That's the pivotal question. Where do you make that assertion? As I listened to Appellant's argument, I saw him focus on everything that happened after the case had been filed. What the Appellant is asking this Court to do is to leapfrog over one of the standing premises. There are two basic premises. There is constitutional standing and there is statutory standing. And throughout the entirety of his argument, throughout the entirety of his brief, he never mentions constitutional standing or what led to constitutional standing or, in his case, what divest him of constitutional standing. Once again, what happened on August 7, 2008 on Interstate 15 in Nevada is what matters. And the Appellant is trying to get this Court to focus on an issue that does not matter or at least it's less relevant than what happened. What happened on that date and time and place in Nevada is that the Appellant unequivocally denied interest and ownership, knowledge even, that the money was there. And he's trying to get this Court to take, to focus on the position that he did everything right once he got in the courthouse door. But what he seems to be saying is that he's now claiming not as an owner but as a bailee. Okay. And we've held that bailees can pursue their rights in a forfeiture proceeding. Right. Well, he, first of all, that argument is waived, Judge, because he never mentioned it below. And so he cannot bring that argument up now. But even if we could, even if we could take that, you could take that into consideration, we have to go back to August 7, 2008. Why does it mean, when you say you have to make an unequivocal assertion, you're saying that doesn't mean in court. It means looking at the whole history of whatever you've done in the past. This is a motion to dismiss. And the opponent of the motion to dismiss files a legal document making an unequivocal assertion. You say that's not an unequivocal assertion if he previously made a contrary assertion. That's right. If he made an inconsistent assertion, if he's making inconsistent assertions throughout the course of this litigation. Where do you find a case that says that at the motion to dismiss stage? I mean, I understand at the summary judgment stage. I understand that. But where does it say that at the motion to dismiss stage, you litigate the merits of his assertion? Well, in this case, the appellant, the government has filed a motion to strike. And we filed that motion to strike under Rule G-8. And that's what I'm asking the Court to focus on in this matter. And in the motion to strike, once again, we've asked this Court to focus on two things, which is to say the statutory standing and the constitutional standing. What happened on August 7, 2008 matters in this case. And what the appellant is trying to get this Court to do. Is that in evidence? I mean, I'm just wondering if – I mean, I think ultimately it matters and it's going to be determinative. But at this stage of the proceedings, I mean, I've seen – there are cases that I've seen where they allow it to proceed where there had been a disclaimer in the record, but they allow it to proceed because at this stage there is an assertion now that there's a legal interest sufficient to warrant standing. Well, I would concede, Your Honor, that in both cases that's cited by the appellant, 191 and $100,348, the cases – the Court did allow those cases to proceed. But there is a vital, important, significant distinction in those cases. In each of those cases, the appellant, the traveler on the scene made a categorical declaration. This is my money. It's my money. In this situation, the appellant said the exact opposite. He said it's not my money. And I would say, Your Honor, that in this context, in every context, words have meaning. Unless there's some peripheral – peripheral issue. There's no question that words have meaning and there's no question that's going to be a problem at this next stage of a case, summary judgment. There you're allowed to do that. The question is what are you allowed to do at this stage of the proceeding? I mean, nobody was suggesting that what he said is not important, can be used against him, can maybe be the basis for judgment. The only question is, you know, to keep the judgment – summary judgment stage different from the initial motion to dismiss stage. Well, at this stage, Your Honor, there has been no motion to dismiss that has been filed with the Court. It is only the government's motion to strike that is pending before this Court. And I would say that, once again, Judge Dawson focused in on the right things when he evaluated the appellant's claim. He said that the appellant has come forth with no legitimate basis for establishing a possessory interest. Let me focus just for a few minutes, Judge, on some cases that we've cited in our brief that are important for this Court's deliberation. The appellant makes the point that he says, I'm the owner, and that should be enough to get me in the door. I am the owner of this property. But other cases that have looked at similar circumstances, just like the circumstance here, have denied ownership. I would refer this Court to the Dinneret opinion that we cited in our brief out of the Middle District of Florida. It's a district court case, but it's significant for how it relates to this case. In that case, the appellant said, when he was stopped by the police, the $18,600 that is in my possession doesn't belong to me. It belongs to my co-defendant or my co-conspirator. Then he switches and changes his mind and says at the pleading stage, after the case has been filed in court, I'm the owner. But the Court says that at some point when you have taken a position that's contrary to the position in court, you can't make these conclusory claims. You have to submit some additional evidence of ownership along with that claim. In the $141,480 case, the same thing happened. The appellant was stopped by the police carrying two FedEx boxes. Both of those boxes contained currency, contained the cash. He said at the scene of the stop, it's not my money. He changed his mind when the case was filed. And I just want to read what the Court said when they denied his claim. They said, which Court is this? This is the Southern District of Florida, and it's cited in our brief, Your Honor. It said that given Durand, and he's the claimant, given his previous denial of ownership, claim of ownership standing alone, with emphasis in my voice to denote what's important, does not sufficiently confer standing. In this case, the appellant has denied ownership at the scene. He comes in, and in his affidavit, in support of his opposition to the government's motion to strike, he makes one conclusory allegation, I'm the owner. And what these cases stand for is that when you ---- Kennedy, you just said the Southern District of Florida district court case. We're also dealing with a district court case. Right. You know. And we have a recent opinion. I don't think they had that opinion in Florida at that time. But, you know, I sympathize with your position. And as I said, I think it's a very strong position at the right time in the case. And so your argument is that this is the right time. But this is the right time, that this Court should consider everything that happened in this case from August 7th forward. And in that context, the number of cases that this Court has decided regarding the issue of standing says that you have to have something more than just a possessory interest. You have to have possession plus. And in this case ---- But he's alleging an ownership interest. Or do you not agree with that? Well, he's alleging ownership interest, but within the context of the cases I've just cited, ownership doesn't carry the day, Judge. And once again, he wants this Court to ignore everything that he said at the scene of the traffic stop. He wants this Court to focus on statutory standing as opposed to constitutional standing. It is a threshold decision that the district court had to make. And, Judge Dawson, looking at what the evidence that the appellant submitted at the district court level, which was basically very conclusory allegations, is not enough. This Court and several other courts, Mercado in the Second Circuit and the 148,000 case, which we cited out of, I believe, Colorado, the Tenth Circuit, all stand for the same proposition, that what you say at the scene ---- Judge Dawson didn't have the benefit of Judge Acuta's decision, did he? I assume that he did not, Judge. Is it required? I know it's in Judge Dawson's first opinion. He said he cited to the claim in the declaration, and then he said, however, Samard has not disclosed the source of his asserted legal right and ownership interest in the property other than his possession. Is that a requirement for constitutional standing, that you disclose the source? Well, not that you disclose the source, but you disclose some relationship of you and the property. As this Court said in Los Francisco's way, it can be any number of things. You can establish standing based upon a financial stake or control or possessory interest, but the possessory interest brings us back to what the cases have said following that, that it has to be something more. So I would say he doesn't necessarily have to supply the source to answer your question directly, but it's more important that he supply a description of how he came into contact with this money. In other words, you don't get standing status by default, Judge. You don't get it just because it's in your possession, it's in your premises, it's in your car. You have to explain something more, and that's what 191. Let me ask you one other question. Do you agree that, forgetting everything that happened before, do you agree that the declaration that he filed constitutes an unequivocal assertion of an ownership interest in the property? I agree that it constitutes an invalid unequivocal declaration of ownership in the property. All right. You agree it does, but that's not enough, is what you're saying. It's not enough. It's not enough, Judge, but not that it's not enough. I would characterize it differently. I would say he asserts it, but it's invalid, given everything that's happened in the past. In other words, it just doesn't make sense for him to say something on one day and something on the other day. Judge, Judge Reinhart, what – and I ask this rhetorically – what is the intervening event that caused him to change his mind? I think that's a fair question for the Court to ask. I can tell you. One, he wasn't in the presence of the cops. He was in the presence of a lawyer. That's the intervening event. But to address that issue, this Court has another mechanism. It has Castillo-Brown. It has Rodriguez, as Judge Dawson cited in his case. If this Court is talking about the fact that there was maybe some level of coercion or threats or intimidation, there is a mechanism for this Court to look at. And when the Court looks at Castillo-Brown and Rodriguez in light of the facts of what happened here, his position is woefully inadequate. He doesn't meet any of the five elements of Castillo-Brown. So if the argument is I made a statement, and he can't back down from that statement, he has never denied that he made that statement. I agree with that. He's made that statement both verbally and in writing. The only way that he can get out of that statement is to maybe some level of mental incapacity or involuntariness. He chose involuntariness. And I would say that when he made that petition in his opposition to the motion to strike, he used three words, coercion, threats, and intimidation. He never provided a factual basis. He just said those three words. But combining or contrasting those three words or the concept of involuntariness in this case as it relates to what the standard is in the circuit, which is Castillo-Brown, that he falls far short of what is required. He cannot establish that any or he has not established, based upon what he said in that declaration, that there was any threats, coercion, and intimidation. Castillo-Brown is an objective standard judge. And what he has submitted, as Judge Silverberman focused on, is his feelings. Feelings are important and significant things. We all have them. But Castillo-Brown says that feelings are beside the point when you are talking about involuntariness. You have to focus on these five criteria. In custody, brandish weapons. Were you advised of your Miranda warnings? Were you told that a warrant could be obtained? And the fourth one, I've got to know who to judge. Scalia. You sound like a presidential candidate, I recall. I don't know if that's a good thing or a bad thing. In any event, I think that Judge Dawson was right. He rightfully concluded that this claim should be dismissed. At the end of the day, what this appellant is asking this Court to do is to undo what he has done with his own words and action on August 7th. He's asking this Court to ignore the obvious and to focus on the speculative regarding police behavior. All right. Your time is well up. Thank you, Your Honor. Thank you very much, counsel. Hopefully I'll get a little more morsel of time here. I just want to address the motion to strike and the motion to dismiss is the same for these purposes because that's the motion to dismiss stage. You file a motion to strike or a motion to dismiss. I just want you to know that there's no distinction. CAFRA allows any claimant, and we did argue gratuitous bailie. It's in the record of page 50. We spent a lot of time arguing that as well. That was not waived. The out-of-district authority, it didn't have the benefit of Judge Acuda's opinion. It's not binding. It's in Florida. You can find a district court unpublished case for every position almost if you look hard enough throughout the United States, and that's why I didn't find those persuasive. Judge Acuda's opinion on page 638 makes it clear that at the motion to dismiss stage, a claimant's unequivocal assertion of ownership in the properties is sufficient for standing. Counsel wants to limit this court's review to August 7, 2008, and that's been my objection the entire time is that you wouldn't ever present the unequivocal ownership declaration until a motion to dismiss or a motion to strike. That's when it would be relevant if the government didn't like your discovery responses, or they would get that information from Rule G discovery, which is always after the statements made at the traffic stop. And I agree there will be a credibility issue that will have to be explained and weighed, but that will be weighed by a trier of fact, not kicking him out of the courthouse with a million dollars where he can't even pursue any viable theory. I mean, CAFRA expanded the role of claimants, not limited. It allows for any type of claimant, and that's why if a claimant simply says they're the owner of the property at the motion to dismiss stage, that should be enough. I agree with Judge Wardlaw's comment. It would be improper for him to lay out as far as how he was the owner, how he acquired the money. That's not relevant at that stage in the proceeding. That's the argument for now. Okay. Thank you very much. Thank you. Okay. This argument will be submitted. The Court will stand in recess for the day. All rise. We'll stand in recess.
judges: Reinhardt, Silverman, Wardlaw